KLIEBERT, Judge.
In a jury trial, the plaintiff, Helen F. Grigsby, 75 years of age, was awarded a judgment of $386,500.00 for general and special damages for injuries she sustained when she tripped and fell face down in the aisle at Schwegmann’s Supermarket in Harvey, Louisiana. Schwegmann appealed on liability and quantum. Grigsby answered the appeal seeking an increase in the quantum. We affirm the trial court.
The accident happened after the effective date of the amendment to Civil Code Article 2323. Therefore, the present comparative negligence doctrine, rather than the old contributory negligence doctrine, i.e., contributory negligence constitutes a complete bar to recovery, is applicable here. The jury’s verdict found Schwegmann guilty of negligence and the plaintiff free from fault, hence, no quantum reduction in the award was made for negligence on the part of the plaintiff.
The accident occurred on October 20,1980 when the plaintiff, Helen Grigsby, and her friend, Mayme Neeb, stopped to shop at Schwegmann’s. The ladies had a cart or carts and were walking through the aisles together, except at times, depending on the items selected, one might stop at one section of an aisle while the other was further down the same aisle. After stopping and picking up several items, the ladies arrived at aisle 13 with Mrs. Grigsby stopping by the pickle display and Mrs. Neeb stopping by the honey display, both located in aisle 13. After having selected a jar of Paramount Dill Pickles, Mrs. Grigsby testified that she tripped over a single box of merchandise left on the floor. She described the box as being about 12 X 14 inches. According to Mrs. Neeb, as she was walking back from the place where the honey was stacked to where the pickles were stacked, she saw Mrs. Grigsby on the floor, face down, with her left foot and leg lying over a box she described as being about the size of a legal pad and heavy as lead. Mrs. Grigsby and Mrs. Neeb both testified this was the only box on the floor. Both testified they did not see boxes stacked three feet high in the aisle at the point where Mrs. Grigsby fell.
Although all of the reports made by Schwegmann’s employee shortly after the accident described the incident as a customer tripping over a box left in the aisle, at the time of trial, Schwegmann disputes the plaintiff’s version of the accident insofar as it contends there was only a single box on the floor. It contends that at the time of the accident there was a row of boxes stacked on top of one another, standing over three feet high which ran the entire length of the aisle. Then, based on the fact there were many boxes stacked in the aisle, counsel argues that as a matter of law Schwegmann is not at fault and cites Meyers v. Schwegmann Bros. Giant Super Mkts., Inc., 284 So.2d 847 (La.App. 4th Cir. 1973) as authority supporting his contention. Counsel’s argument, however, is without merit. Although there is testimony indicating frozen food boxes were stacked three feet high in the aisle, there is no testimony that Mrs. Grigsby tripped and fell over a stack of frozen food boxes. Both Mrs. Grigsby and her friend, Mrs. Neeb, testified the plaintiff tripped over a single box left unattended on the floor. Even though there may be a conflict between the testimony of Schwegmann’s employees and *390 that of the plaintiff and Mrs. Neeb as to the existence of stacked frozen food boxes in the aisle, the jury resolved the cause of the tripping in favor of Mrs. Grigsby. We cannot say the jury committed manifest error in doing so.
Under the standard of review established in Canter v. Koebring, 283 So.2d 716 (La.1973), when there is evidence before the trier of fact which upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the findings of the trier of the facts, the reviewing court should not disturb this factual finding in the absence of manifest error. Here, there is the clear and convincing testimony of the plaintiff and of Mrs. Neeb that plaintiff tripped and fell over a single box on the floor. This is supported by Schwegmann’s accident report. On the other hand, there are substantial discrepancies in the testimony of Schwegmann’s employees as to the time the accident occurred, as to the condition of the floor following the accident, i.e., with or without broken glass and pickles on the floor and as to the length of time frozen food could sit in the aisle unrefrigerated without thawing out. For whatever reasons the jury elected to accept the testimony of Mrs. Grigsby and her friend over that of Schwegmann’s employees is unknown to us, but as the initial trier of the facts, it was their prerogative to make the selection. From our review of the record, we would make the same selection.
Following the accident, Mrs. Grigsby was taken to Jo-Ellen Smith Hospital where x-rays revealed severe orthopedic problems. Dr. Williams, an orthopedist, testified that her arm bones at each shoulder joint level were shattered. Additionally, both arms were black and blue and swollen. Her face and left leg were also bruised and discolored. She went from Jo-Ellen Smith Hospital to Baptist Hospital to Coliseum Medical Center (a convalescent hospital) where she stayed until February 14th, 1981. When she left there, her shoulder had little mobility because the humeral head healed in an abnormal position. Her left arm had mobility, however, she could not lift it over her head nor could she bring it down to the side of her body. According to Dr. Williams, greater mobility might be obtained if two additional surgical procedures were performed and this was followed by prolonged physical therapy. The plaintiff testified she would not submit to additional surgery because she could not take more pain.
Prior to the accident, plaintiff was an active individual who drove her own car, lived alone, maintained her own home and was capable of visiting friends and enjoying long trips. Now she is virtually helpless, requiring constant care, including the performance of routine activities of daily living, such as, combing her hair, dressing, cooking, etc. Additionally, Dr. Smith a psychiatrist, testified that as a result of the fall Mrs. Grigsby had a fear of the unknown and a fear that something would happen to her at home if she lived alone.
Mr. Phillip Clesi, an actuary, using Mrs. Grigsby’s stated age of 75 years, established her to have, according to the life expectancy tables, a life expectancy of 10.3 years. Then, using the present wage scale paid to her sitters, i.e., $3.35 per hour, he computed that it would require $300,345.00 for the care and attention Mrs. Grigsby needed for the remainder of her life.
In answer to a specific interrogatory as to the total amount of plaintiff’s damages, the jury responded as follows:
Past pain and suffering $ 36,500.00
Future pain and suffering 75,000.00
Past medical, nursing, hospital
and home care expenses 25,000.00
Future medical, nursing,
hospital and home care
expenses 250.000.00
Total $386,500.00
Plaintiff argues for a higher award for past due and future pain and suffering, for an increase in past due medicals of $10,-000.00 and for an increase in future medical care and costs to $300,345.00. Schweg-mann, on the other hand, argues that the amounts fixed by the jury were excessive and further should be reduced because of plaintiff’s negligence. The medical bills and expenses were admitted in evidence under a stipulation that if Mrs. Grigsby testified she would have identified each bill and each check, hence, the bills were admit *391 ted into evidence in globo. There was no stipulation, however, that the bills and expenses were actually incurred by Mrs. Grigsby as a result of the accident.
The jury was presented with uncon-tradicted testimony regarding the pain and suffering of Mrs. Grigsby as well as her condition at the time of trial. They had the opportunity to listen to the “live” witnesses and observe the plaintiff for several days. They were in a much better position to evaluate the plaintiff’s injuries than we are. Also, under the standard of appellate review set by the Supreme Court in Reck v. Stevens, 373 So.2d 498 (La.1979), before changing the jury’s award, we must first find there was a clear abuse of their “much discretion” in fixing an award. We are not at liberty to speculate on the jury’s motivation in arriving at the individual items which made up the total award; nor can we, after a careful review of the record, say the total award was inadequate or excessive. Rather, we believe it was a reasonable award and well within the jury’s discretion.
For the reasons stated, therefore, we affirm the trial court’s judgment. All costs of appeal to be borne by the appellant.
AFFIRMED.